**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 07-2301

LIFEI LIN,

Petitioner,

V.

MICHAEL MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lipez, <u>Circuit Judge</u>,
Merritt,[*] <u>Senior Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.

<u>David V. Bernal</u>, Assistant Director, Office of Immigration Litigation, <u>LaTia N. Bing</u>, U.S. Department of Justice, and <u>Anthony C. Payne</u>, Senior Litigation Counsel with Office of Immigration Litigation, U.S. Department of Justice, were on brief for Respondent.

<u>Wei Jia</u> was on brief for Petitioner.

May 8, 2008

---

[*]Of the Sixth Circuit, sitting by designation.

**MERRITT**, <u>**Senior Circuit Judge**</u>.  Petitioner Lifei Lin, a citizen of the People's Republic of China, applied for asylum, relief from withholding of removal and relief under the Convention Against Torture on the ground that he had been arrested and mistreated by Chinese authorities due to violations of Chinese family planning laws.  Lin seeks review of the Board of Immigration Appeals' July 25, 2007, decision dismissing his appeal from an immigration judge's March 20, 2006, decision, which denied his application for asylum and withholding of removal.[1]  This Court's jurisdiction  is governed by section 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, which provides for review of final orders of removal.  Lin contends that the adverse credibility findings of the immigration judge and upheld by the Board of Immigration Appeals are not supported by substantial evidence.  Lin also contends that the Board impermissibly engaged in its own fact finding and that he was deprived of his due process rights when the immigration judge failed to explicitly state in the decision her reliance on the REAL ID Act in assessing his credibility under a "totality of the circumstances" standard.  For the following reasons we deny the petition.

---

[1]The immigration judge also denied Lin's request for protection pursuant to the Convention Against Terror, but Lin did not appeal that part of the decision.

## I.

Mr. Lin was born in Fuzhou City, China, on March 7, 1983. He "married" on September 10, 2002, with a celebration among family and friends, but Lin acknowledges that the marriage was not official because both the bride and groom were underage under Chinese law. A child was born to the union on November 17, 2003. Lin's "wife" and son remain in China. Upon learning of the pregnancy and the underage marriage, the authorities arrested Lin. Lin claims he was detained by authorities when he refused to disclose the whereabouts of his girlfriend for fear she would be forced to abort and because he was unable to pay the fine. Lin left China in 2003 because he feared future persecution based on his failure to follow China's family planning laws by marrying underage and by having a child without permission, as well as his failure to pay a fine imposed due to the violations.

After leaving his home, Lin went into hiding – first in China, then in Holland and Peru. He eventually made his way to the United States and arrived at Miami International Airport on February 6, 2005. Lin had no valid travel documents or other papers and paid $7,000 or $8,000 for a smuggler to get him into the United States. He requested political asylum and said he left China because he was "afraid of being punished for impregnating [his] girlfriend." Lin fears that he would be persecuted if he returned to China for violations of the family planning laws.

**II.**

To qualify for asylum, an alien needs to demonstrate that he is a refugee due to previous persecution or a well-founded fear of future persecution based on race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1158(b)(1);  Berrio-Barrera v. Gonzales, 460 F.3d 163, 167 (1st Cir. 2006). With regard to a fear of future persecution, the applicant must demonstrate an objectively well-founded fear of persecution on a protected ground and that this fear is genuine. Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999) (proving the objective and subjective components of a well-founded fear of future persecution requires the petitioner to show her fear is "both genuine and objectively reasonable").  Fear of forced abortion or sterilization is categorized as fear of persecution on account of political opinion.  8 U.S.C. § 1101(a)(42) ("A person who has a well-founded fear that he or she will be forced to undergo [a forced abortion or sterilization] procedure or [is] subject to persecution for failure, refusal, or resistance [to undergoing such a procedure] shall be deemed to have a well-founded fear of persecution on account of political opinion."); Zheng v. Gonzales, 475 F.3d 30, 34 (1st Cir. 2007).  In addition, the spouse of a person forced to undergo sterilization or abortion procedures may be deemed to have a well-founded fear of persecution. Lin v. Ashcroft, 371 F.3d 18, 21 (1st Cir. 2004).  Lin claims persecution

-4-

as the result of the Chinese government's efforts to enforce its coerced population control policies, including the possibility of forced sterilization for him or his girlfriend should he return to China.

Lin's applications were denied because the immigration judge found that he lacked credibility, primarily due to inconsistencies among his testimony at the hearing, his asylum application and statements made during two interviews held shortly after he entered the country. See Oral Decision of the Immigration Judge at 9-11. The immigration judge set out numerous discrepancies in detail in her decision. Based on these discrepancies, the immigration judge discredited the majority of Lin's claimed fear of persecution and torture should he return to China.

For example, the immigration judge found a discrepancy as to when Lin's girlfriend's pregnancy was reported to the authorities. Lin testified at his hearing that his "wife" had been pregnant for little over a month when the authorities found out, but notes taken during an earlier credible fear interview suggest that she was five months pregnant. The immigration judge also found a discrepancy as to the reasons given by Lin for his detention by the authorities. Lin did not mention during his credible-fear interview any concern about his girlfriend being forced to have an abortion or fear that either or both of them would be forcibly sterilized at a later date. The only fear Lin expressed at that time about returning to

China concerned the punishment he might face for his failure to pay the fine. Later, however, during direct examination at the hearing, Lin expressed a fear of forced sterilization should he return to China. He also testified that he fled China because he feared further beatings based on the beating he says he received by Chinese authorities when he refused to divulge the whereabouts of his girlfriend for fear she would be forced to have an abortion. Also noted by the immigration judge was a discrepancy about the duration of detention: Lin reported the detention as lasting two days during the asylum interview but said it was four days on direct examination during his hearing before the immigration judge. Lin also reported being beaten with an electric baton in his asylum interview, but did not mention until his hearing that he had been injured and hospitalized due to the beating.

The immigration judge also noted the unexplained discrepancy in why Lin originally claimed to have been arrested on January 5, 2003, but then later testified that he was actually arrested on March 30, 2003. Similarly, the immigration judge noted a discrepancy between Lin's application for asylum and his asylum interview concerning the date he left China. June 20, 2004, was the date given at the asylum interview, but October 20 2003, is the date Lin gave in his asylum application. Lin has also submitted contradictory evidence regarding the events that took place

subsequent to his arrest in China and prior to his arrival in the United States.

Based on these multiple discrepancies, the immigration judge found that Lin had failed to meet his burden of proof with regard to his asylum application. Because Lin failed to meet the burden of proof for asylum, he was also unable to meet the more stringent standard for withholding of removal. Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005) (finding that because the burden of proof necessary to establish an asylum claim is lower than the burden of proof required to prevail on a withholding of removal claim, "the BIA's rejection of the petitioner's asylum claim, if sustainable, sounds the death knell for his counterpart claim for withholding of removal").

Lin appealed the denial of his applications to the Board of Immigration Appeals, which affirmed on the ground that the adverse credibility finding was not clearly erroneous. The Board decision focused primarily on the discrepancies concerning various dates, such as when Lin left China, when he was arrested, and the date on which his girlfriend's pregnancy was discovered by the authorities as well as the circumstances surrounding the disclosure of the pregnancy to the authorities. The Board also noted the inconsistencies in Lin's statements concerning the events that took place after he was arrested and his activities and whereabouts

-7-

prior to entering the United States. Decision of the Board of Immigration Appeals, July 25, 2007.

Lin petitions this Court for review of the Board's decision. He contends that the adverse credibility finding was not supported by substantial evidence. We review the Board's findings of fact under a substantial evidence standard, under which the agency's findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. We review the entire record to assess whether the findings are supported by substantial evidence. Where the Board adopts the immigration judge's ruling, but also engages in discussion of its own, as here, we review both decisions. Hem v. Mukasey, 514 F.3d 67, 69 (1st Cir. 2008). Under the deferential substantial evidence standard, we consider whether the agency's ruling is supported by "reasonable, substantial and probative evidence on the record as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Upon review of the entire record, we hold that substantial evidence supports the findings of the immigration judge as affirmed by the Board of Immigration Appeals. The discrepancies are well documented in the immigration judge's decision and the record does not compel a contrary conclusion.

Lin also contends that the Board violated its scope of review because it impermissibly engaged in fact finding when it "determined that Lin originally claimed to have been arrested on

January 5, 2003, but then later testified that the event occurred on March 30, 2003." Lin claims the immigration judge made no such finding in her decision. Petitioner's Br. at 10. Contrary to Lin's argument, however, the immigration judge explicitly found a discrepancy when she said "in the asylum interview respondent asserts he was arrested on January 5, 2003, as opposed to March 30, 2003, according to his direct testimony." Oral Decision of the Immigration Judge at 11. Accordingly, Lin's argument concerning impermissible fact finding by the Board fails.

Lin also argues that his due process rights were violated because the immigration judge did not clearly indicate that new amendments to the REAL ID Act[2] applied to Lin's asylum application

---

[2]The new language provides:

> Credibility determination. Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii); see also 8 U.S.C. §§ 1231(b)(3)(C) & 1229a(c)(4)(C) (credibility determination for removal proceeding).

and yet the Board, on appeal, explicitly applied the provisions. The import of the amendments to the REAL ID Act is to eliminate the "heart of the claim" rule and instead to rely on a "totality of the circumstances" rule in making credibility determinations. The change allows the immigration judge to make credibility findings based on all the evidence – not just evidence that goes to the "heart" of the petitioner's claims. See Castañeda-Castillo v. Gonzales, 488 F.3d 17, 23 n.6 (1st Cir. 2007) (en banc) (under Real ID Act "fact-finder is entitled to draw the *falsus in omnibus* inference based on inaccuracies, inconsistencies, or falsehoods, without regard to whether they go to the heart of the applicant's claim," although the amendment would not have changed result in case at bar) (internal quotation marks and punctuation omitted); Chen v. United States Att'y Gen., 454 F.3d 103, 106-07 n.2 (2d Cir. 2006) (per curiam) (in case in which Real ID Act inapplicable, stating that new provision would seem to overrule certain Second Circuit credibility determination rules); Chen v. United States Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006) (applying Real ID Act; rejecting argument that discrepancy was trivial); Jibril v. Gonzales, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005) (opining that if Real ID Act applied to the case, it would change result dictated by Ninth Circuit's heart of the claim rule); In re J-Y-C-, 24 I. & N. Dec. 260, 265 (BIA 2007) (not necessary under Real ID Act that

inconsistencies relied on in credibility determinations go to the heart of the claim). But see Kadia v. Gonzales, 501 F.3d 817, 821-22 (7th Cir. 2007) (in case in which Real ID Act not applicable, expressing skepticism that Real ID Act revives "discredited" doctrine of *falsus in uno, falsus in omnibus*).

Consequently, we may not reverse the Board's decision on the ground that the inconsistencies it relied on in affirming the adverse credibility do not go to the "heart" of Lin's claim. However, the immigration judge found Lin's testimony not credible with regard to several facts that "go to the heart" of Lin's asylum claim. Oral Decision of the Immigration Judge at 8, Mar. 20, 2006. Therefore, Lin's application fails to meet the necessary burden under either the new, more-stringent standard of the REAL ID Act amendment that allows the immigration judge to assess credibility based on every fact put forth by the applicant in support of his application or under the former "heart of the claim" standard that requires the immigration judge to look only to those facts central to the claims in the application. Accordingly, even if the immigration judge did not apply the new "totality of the circumstances" language from the REAL ID Act amendments, and we have no reason to believe that she did not,[3] Lin suffered no

---

[3]The immigration judge is entitled to a presumption of regularity in her rulings such that the failure to explicitly mention that the REAL ID Act applied to the application does not violate Lin's due process rights. Enwonwu v. Gonzales, 232 Fed. Appx. 11, 15 (1st Cir. May 10, 2007) (no due process violation

prejudice from the immigration judge's reliance on the "heart of the claim" standard for assessing credibility.

For the foregoing reasons, the petition is denied.

---

where presumption of regularity attaches to agency action absent petitioner putting forth "concrete evidence" to the contrary); McLeod v. INS, 802 F.2d 89, 94-95 & n.8 (3d Cir. 1986) (same).